**Orville E. Babcock et al., Complainants and Appellees, v. Chicago Railways Company and Harrison B. Riley, Abel Davis, Frank S. Gardner, Henry F. Tansley and Holman D. Pettibone, Depositaries, under Agreement of August 1, 1907, Defendants and Appellants.**

## Gen. No. 29,970.

1. CORPORATIONS—*sufficiency of bill to terminate reorganization trust agreement.* Where, by a plan for the reorganization and consolidation of the street railway lines in the City of Chicago, the stock was placed in certain depositaries who were given the power to vote such stock and elect directors and certificates were issued to a large number of persons who by the agreement were entitled to participate in the earnings of the company and to meet and by a majority vote direct the depositaries whom they should elect as directors, but no such meeting was had for over 17 years, during which time directors were elected by the depositaries, a bill to terminate the present right in the depositaries to vote the stock and to require that the control of the company be placed

Babcock v. Chicago Railways Co. et al., 236 Ill. App. 360.

in the hands of directors to be elected by the holders of the participation certificates was held to be lacking in equity in its main aspect and also to be insufficient in so far as it sought to obtain from the depositaries by a court order a list of the names and addresses of all of the holders of the participation certificates.

2. INJUNCTIONS—*when temporary injunction improperly granted.* Where a bill seeking to have the control of a street railway company placed in the hands of directors to be elected by participation certificate holders instead of in directors elected by persons who were depositaries of the capital stock, under a plan of reorganization, was lacking in equity in its main aspect and many of the allegations of the bill as to the conduct of the business by the directors and depositaries were made upon information and belief and were denied in the answer and the situation is the same as it has been for a number of years, the court erred in granting a temporary injunctional order restraining the depositaries from voting the stock held by them for the election of any director until the further order of the court.

Appeal by defendants from an interlocutory injunction, entered by the Circuit Court of Cook county; the Hon. FRANCIS S. WILSON, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1924. Reversed. Opinion filed April 3, 1925.

**Statement by the Court.** This is an appeal from an order of the circuit court of Cook county, entered October 24, 1924, wherein the above-named depositaries under said agreement were restrained, until the further order of the court, "from voting the stock of the Chicago Railways Company for the election of any director of the said Railways Company."

The injunctional order is a part of a draft order, wherein it is recited that the cause came on to be heard upon the general and special demurrer of the defendants, Chicago Railways Company and Henry A. Blair, Bruce Borland, Chauncey B. Borland, John A. Chapman, Wallace Heckman, Herman H. Hettler, Charles V. Weston and John R. Wilkie (individually and as directors of said Chicago Railways Company), and also upon complainants' motion for an order requiring said depositaries "to produce a list of the

holders of participation certificates," issued under said agreement, and also upon complainants' motion for said injunction. It was ordered that said special demurrer be sustained

"because of the vague, indefinite and uncertain allegations concerning said defendants such allegations being that the said defendant, Blair, has caused depositaries to elect directors named by said Blair, and that certain directors have not participated or acted intelligently in the control or management of said Railways Company, and that they have voted for propositions that Blair desired to be passed, and that they have not exercised independent judgment upon propositions arising for decision; that the depositaries have not exercised independent judgment in voting for directors, but have voted for such persons as said Blair desired; that the said Blair is attempting to retain exclusive control of the management of the Railways Company; that he receives a large yearly salary which is excessive, and that said Blair has conspired and combined with the owners of bonds to deprive the participation certificate holders of the right of income to increase the values of the properties covered by said mortgage, at the expense of the participation certificate holders; and that said properties may be sold by said Blair and his directors at prices which will not be for the best interests of the certificate holders; that large earnings have been disbursed for improper, and unauthorized purposes, and for purposes which were not germane to the operations of said street railway system."

It was further ordered in the same draft order that complainants be given leave to amend their bill without prejudice to the injunction; that the general demurrer of the City of Chicago be sustained; and that "the motion of complainants for an order requiring the production of said list of holders of participation certificates, at this time, be denied."

The certificate of evidence discloses that the only evidence presented on the hearing of the motions was the bill as amended and its verifying affidavit, the an-

Babcock v. Chicago Railways Co. et al., 236 Ill. App. 360.

swers of the Harris Trust & Savings Bank and the Central Trust Company of Illinois, and the answer and additional answer of said depositaries. The affidavit to the bill as amended is by one of the complainants, to the effect that the allegations "are true to his own knowledge, except as to the matters therein stated to be on information and belief and as to those matters he believes them to be true."

The bill was filed on April 23, 1924, by Orville E. Babcock, William F. Prindle, Robert J. Dunham, Henry C. Edmonds, Judson F. Stone, Sidney Mitchell, Albert A. Sack, Arthur T. Gault and Hugh T. Birch, "not only on their own behalf, but also on behalf of all other holders of participation certificates of the Chicago Railways Company, issued under an agreement dated August 1, 1907,   *   *   *   who may wish to join herein." It sets forth in general outline the facts leading up to the receiverships of certain of the street railway companies in Chicago and the method by which the Chicago Railways Company (hereinafter referred to as the "Railways Co.," organized under Illinois laws with a capital stock of $100,000, represented by 1000 shares, for the purpose of acquiring, operating, reconstructing and re-equipping and extending the said system of street railways) thereafter acquired title to a part of the present traction system of Chicago. The ordinance of the City of Chicago of February 11, 1907, together with a portion of exhibit D attached thereto; the "Modified Plan of reorganization," promulgated under and in pursuance of the ordinance; the said agreement of August 1, 1907 (by and between the five holders of indorsed certificates, for and representing all the shares of the capital stock of said Railways Co., parties of the first part, and Adolphus C. Bartlett, Chauncey Keep, Charles H. Hulburd, Albert A. Sprague and Charles G. Dawes, as depositaries, parties of the second part, and the Central Trust Com-

pany of New York, as custodian, party of the third part, and "the holders, from time to time, of Participation Certificates issued or to be issued hereunder," parties of the fourth part); and the "General Balance Sheet as at January 31, 1924" of the Railways Co., are all attached to the bill as exhibits and made parts thereof. The bill alleges the authorization, under the ordinance and plan, to the Railways Co. to offer to all persons having any interests or rights in said then existing railway system an opportunity to participate in the transfer to and acquisition by it of all properties and rights in and to the property to be so acquired by it; and its authorization to issue 20-year 5 per cent bonds, to be secured by a first mortgage on all of its property so to be acquired, "the proceeds of said bonds to be used to comply with the requirements of said ordinance concerning rehabilitation, additions, extensions and other construction work therein referred to"; and its authorization to execute a consolidated (or second) mortgage upon said property to secure an issue of 20-year bonds, aggregating but not to exceed $37,500,000 (but contingently subject to some enlargement thereof), $15,900,000 of said bonds to be known as series "A," and to have priority over series "B" and "C" of said bonds, and $16,900,000 of said bonds to be known as series "B," and to have priority in all respects over bonds of series "C," and not to exceed $4,700,000 of said bonds to be series "C"; and its authorization to issue 5-year 6 per cent collateral notes in the amount of $15,000,000.

The bill further alleges that said plan also provided that the stockholders of the Railways Co. should make all of its capital stock "subject to an issue of participation certificates * * * representing in the aggregate 265,100 equal parts, 30,800 of which should be known as series I and be entitled to priority in distribution of the dividends paid upon said capital

stock, to the extent of $8 for each part represented by said certificates for each and every year, commencing with the year ending August 1, 1908, and that said dividends should be cumulative until paid; and in the distribution of capital or principal realized from said stock * * * to the extent of $100 for each part, said series I certificates should also have priority before such distribution to certificates of any other series"; that "the remainder of said certificates should be divided into three series to be known as series II, consisting of 124,300 parts, series III, consisting of 60,000 parts, and series IV, consisting of 50,000 parts"; that "said consolidated (or second) mortgage should provide for the payment of $250,000 per annum (if earned) into a sinking fund, which should be applied solely to the redemption or the purchase of said bonds of series 'C,' and that all such bonds thus redeemed or purchased should be cancelled, and that said sinking fund should be cumulative, * * * and that after all said bonds were paid, said sinking fund provision should cease to be operative"; that "when the whole of said sinking fund payment shall have been made in any year and any accumulated deficiencies in respect to said payment shall have been met, any remainder of said earnings should be next applied to the payment of $8 for such year (and any unpaid accumulations for preceding years) in respect of each equal part represented by participation certificates of series I"; that *"the voting power* upon the stock of the said Railways Co., *for the period of five years and until said consolidated mortgage bonds could be paid,* should be vested in Messrs. A. C. Bartlett, Charles H. Hulburd, Albert A. Sprague, Chauncey Keep and Charles G. Dawes, *or their successors,* and that the rights of the holders of said participation certificates *should be subject to the prior rights of the holders of the bonds and collateral notes above mentioned";* and that said plan designated the Harris

Trust & Savings Bank to act as depositary, and provided that "holders of existing stock or other securities might avail themselves of said plan *by depositing their securities* with said Trust Company *and their joining in the agreement or reorganization.*"

The bill further alleges that the plan and the ordinance were accepted by the Railways Co.; that the holders of certain shares of the stock of the North Chicago City Railway Co., and of certain shares of the stock of the Chicago West Division Railway Co., deposited their stock with a certain named trustee; that all of the stock ($100,000) of the Railways Co. was transferred to said depositaries, and said agreement of August 1, 1907 (hereinafter referred to as the "agreement"), was entered into, by which they agreed to issue negotiable participation certificates to all who were entitled to them under the plan; that subsequently the certificates were issued, and "are still outstanding and are owned by several hundreds of persons, the names and residences of many of whom are *doubtless* unknown to your orators, and that it is impracticable to make all of said participation certificate holders parties or plaintiffs in the suit"; that "complainants (other than Gault and Sack) are severally owners and holders of said series I participation certificates aggregating more than——parts"; that Mitchell is the owner of 1,600 parts of said series II, and of 1,000 parts of series "C" of said certificates; that Sack is the owner of 1,700 parts of series II certificates, of 2,300 parts of series III, and 2,400 parts of series IV; that Gault and Birch are the owners "of a number of parts of said series——certificates"; and that complainants and said other owners "are entitled to receive, respectively, dividends payable upon said certificates."

The bill then alleges the entry of an order in December, 1907, in the then pending receivership suits, whereby the Railways Co. was given a lease of certain

Babcock v. Chicago Railways Co. et al., 236 Ill. App. 360.

street railway lines until February 2, 1927, its acceptance of the lease and properties, its present possession thereof and the execution by it of four mortgages, securing bonds issued by it in accordance with the plan and agreement; that of the first mortgage bonds over 59 million dollars of them are now outstanding; that in said first mortgage it was provided that Chauncey Keep, Henry A. Blair and B. A. Eckhart, and their successors, should "constitute a Finance Committee," and that "the amounts of the earnings of the Railways Co., which were properly applicable to the payment of dividends upon the stock of the Railways Co., or otherwise distributable, * * * *should not be fixed or distribution thereof made until said distribution should first be approved by said Finance Committee"*; that of the consolidated (or second) mortgage bonds there are now outstanding, of series "A," more than 17 million dollars, and of series "B" more than 17 million dollars; that about December 1, 1910, a third mortgage was issued and then a fourth mortgage; that of the third over 4 million dollars in bonds are now outstanding, and of the fourth 2½ million dollars in bonds are now outstanding; that all of series "C" bonds of the consolidated (or second) mortgage have been paid; that annual dividends were paid to the holders of series I certificates up to August 1, 1917, but that no dividends have been paid since, although often requested by certain holders; and that the Railways Co. has accumulated and now has a surplus of over 2½ millions of dollars, and had cash on hand on January 31, 1924, of more than 1¼ millions of dollars.

The bill further alleges that the original five depositaries resigned and that the present five (Harrison B. Riley et al.) were elected in their places, and are now acting as such; that the Merchants Loan & Trust Co. (trustee of the consolidated mortgage) and the Illinois Trust & Savings Bank (trustee of the third

mortgage) have consolidated into a corporation known as the Illinois Merchants Trust Co., which latter corporation is now the owner of many of the bonds secured by said four mortgages; and that for many years said Henry A. Blair was a director and a vice president of said Illinois Trust & Savings Bank and one of the directors of said Merchants Loan & Trust Co., and is now a vice president and director of said Illinois Merchants Trust Co.

The bill, as amended, then charges, upon information and belief, that "said depositaries have never taken any steps or made any effort to cause the net earnings of said Railways Co. (which are applicable as aforesaid to dividends upon said series I certificates) to be distributed as dividends among the holders of said certificates, although they have known, or should have known, since August 1, 1918, that said Railways Co. has been wrongfully *defrauding* all of said net earnings to other purposes as above stated, and that on the contrary said depositaries pretend that they know of no fact which would justify them in taking any such action, although requested by the holders of series I certificates to take such legal action"; that although the agreement permits and contemplates that there should be meetings of the *registered* holders of said participation certificates, yet "at no time since August 1, 1907, has any such meeting been held, and that each year since said date said defendant Blair has caused said depositaries to elect directors named by said Blair who were not holders of any of said participation certificates and had no financial interest in said Railways Co., and that said directors, if stockholders at all, only owned severally such single shares of stock of said Railways Co. as were necessary to qualify them to act as such directors"; that of the present directors of the Railways Co., the defendants Bruce Borland and Chauncey B. Borland are nephews of said Blair, and defendants Weston

and Wilkie were formerly employees of said Railways Co., and employed by said Blair, and defendants Chapman, Heckman and Hettler are friends of said Blair; and that none of said directors are owners of any of said participation certificates. Then follow in the bill the further charges on information and belief substantially as outlined in the draft order of the circuit court first above mentioned.

The bill sets forth the provisions in the agreement relative to the depositaries keeping books wherein should be registered the names and addresses of all persons to whom original participation certificates of said four series were issued, and the names and addresses of transferees, and alleged that said depositaries have now in their possession such books, and have wilfully disregarded their duty to holders of certificates, in that they have repeatedly refused to give to some holders access to said books or a list of the names and addresses of all holders.

The relief prayed for in the bill is substantially as follows: (a) That so much of the agreement as confers on the depositaries "the right to vote" the stock of the Railways Co. "be decreed to be no longer operative," and that the "control" of the company "be declared to be henceforth in directors to be elected by holders of said participation certificates"; (b) that a meeting of the certificates holders be held under the court's supervision for the selection of directors of the Railways Co., at which meeting the holders "be allowed to accumulate their votes"; and that the present five depositaries be ordered to file a true list of the present holders of all classes of participation certificates and their addresses; (c) that an account be taken, etc.; (d) that the present directors (Henry A. Blair et al.) be enjoined from taking any action, as directors, prior to the election of new directors by the holders of certificates, and from further negotiating with the City of Chicago look-

ing to the sale or other disposition of the properties of the Railways Co.; (e) that the City of Chicago be enjoined from entering into any agreement for the purchase of the properties of the Railways Co. with said Blair or his codirectors prior to the election of new directors in the manner aforesaid; (f) that the five depositaries be enjoined from voting any of the stock of the Railways Co. for directors, until after said meeting of the holders of participation certificates; (g) that a receiver be appointed, if and when necessary.

It is provided in section 1 of article 3 of the agreement that:

"The depositaries shall not be liable for or because of any action taken or suffered on their part under or in pursuance to this Agreement, or by them believed to be authorized thereby, which is done, taken, or suffered by them in good faith; nor, in any event, except only each for his intentional bad faith; and they shall be conclusively protected by the report or advice of their counsel."

It is further provided in section 2 of said article that:

"Until the first day of August, 1912, *and* to the full extent thereafter *which may be permitted by law, until all* the *Consolidated Mortgage Bonds* of the Railways Company * * * *shall be fully paid and discharged,* the Depositaries, or a majority of them, shall be entitled, subject to the provisions hereinafter contained, (1) *to vote* upon the capital stock of the Railways Co. * * * at any and all meetings, regular or special * * * ; and (2) to take any action, give or execute any consent, or take any step which owners of such stock are at that time entitled or authorized to take, give or execute; all with the same force and effect as if the Depositaries were at the time the absolute owners of such stock. In voting or causing said stock to be voted the Depositaries will exercise their best judgment from time to time to secure suitable directors, to the end that the

affairs of the Company shall be properly managed, * * * ; but they assume no responsibility and shall be under no responsibility in respect to such management, * * * or in pursuance of their votes so cast."

It is further provided in section 4 of said article that:

"*After five years from August 1, 1907*, the right and power of the Depositaries to vote the shares of stock * * * shall, subject to the provisions of this Agreement, be exercised from time to time in favor of the election of such directors * * * as may be directed * * * by the *registered* holders of Participation Certificates of Series I, Series II and Series III then outstanding hereunder, *to an amount greater than one-half* the total number of said equal parts represented by such outstanding certificates of said *three* series; and the Depositaries do hereby agree and bind themselves to so vote as may be thus directed and not otherwise; *provided, however,* that no such direction shall be binding or complied with which shall in anywise affect or impair the rights or *priorities* of or between the Participation Certificates of said *four* series * * * as the said rights and *priorities* are in said certificate and in this Agreement set forth and mentioned.

"Such consent or direction may be given or evidenced by resolution adopted by the affirmative vote * * * of the *registered* holders of the number of Participation Certificates above prescribed * * * at a meeting of the registered holders, * * *. Whenever, and as often as the registered holders of Participation Certificates representing not less than 10 per cent of the whole number of the said equal parts represented by either series, * * * or representing not less than 10 per cent of the whole number of said equal parts * * * , shall request the Depositaries or the Custodian, in writing, to call a meeting of the registered holders * * * authorized to vote * * * , and shall reasonably indemnify the Depositaries or the Custodian * * *

against the expense of calling and holding such meeting, it shall be the duty of the Depositaries or the Custodian * * * to call a meeting * * * which meeting shall be held at such place in the City of New York or in the City of Chicago, as the Depositaries or the Custodian shall appoint, at a date not earlier than 30 days and not later than 40 days after the making of such request and the furnishing of such indemnity.''

It is further provided in section 1 of article 4 of the agreement that: ''This Agreement, unless sooner terminated in accordance with the provisions of section 2 of this Article, shall remain in full and unimpaired force (a) until January 1, 1913, and (b) thereafter until all the bonds at any time issued under the 20 Year Consolidated Mortgage * * * *shall have been fully paid and retired.''* In said section 2 provision is made for the termination of the agreement by the depositaries *in their discretion* upon the happening of any of the following events: (a) The consummation of a purchase of the properties of the Railways Co. by the City of Chicago; (b) a sale of the entire system of street railways, or of a consolidation or merger as provided in the agreement; (c) upon the written direction to the depositaries *of the holders of 75 per cent* of the whole number of said equal parts represented by and specified in *each* of said *four* series, separately, of the participation certion of the Railways Co. in accordance with law or by tificates at the time outstanding; (d) upon a dissolua court decree. And it is further provided in section 5 of article 5, as follows:

''It is expressly provided that until the termination of this Agreement, the *right to vote* on said stock certificates for every purpose and to consent to any corporate act of said company, shall exist, be vested in and be exercised *only* as in this Agreement provided, and that *no voting right passes to others* under or by the Participation Certificates, or under or by this Agreement, or by or under any agreement

whatever, express or implied, *except only to the extent that Certificate Holders may,* upon the terms and conditions and at the times hereinbefore provided, *exercise the privilege of direction or consent."*

In the sworn answer of the five defendant depositaries, it is alleged that the only complainants who are *registered,* under said agreement, as holders of any of said participation certificates are: Judson F. Stone—131 shares of series II; Sidney Mitchell—100 shares of series I, 1,175 shares of series III and 25 shares of series IV; Albert Sack—100 shares of series I and 600 shares of series II; Arthur T. Gault—879 shares of series II; and that no certificates have been registered, as issued or transferred in accordance with said agreement in favor of the other complainants, Babcock, Prindle, Dunham, Edmonds or Birch. It is admitted that dividends have been paid by the Railways Co. upon certificates of series I *up to but not after* August 1, 1917, but it is alleged that *"the Finance Committee* of said Railways Co. * * * *have not authorized or permitted the Railways Co. to declare or pay any dividends from its earnings since that time,"* and that all declared dividends "have been paid direct to the certificate holders"; that these defendants have no interest or right in the subject-matter or controversy embraced in the bill, except under the agreement, and the documents of which it forms a part; that they have at all times performed and are now willing to perform their full duties in the premises and have never directly or indirectly refused to do so; that they do not know that the Railways Co., since August 1, 1918, has been wrongfully diverting all of its earnings to other purposes than the payment of dividends upon the participation certificates; that they do not know and have not been informed of any facts that would justify them in demanding of the Railways Co. that it pay further dividends; that on May 18, 1923, they received a letter,

signed by the firm of Babcock, Rushton & Co. (of which complainant Babcock is a member) and Mahlon D. Thatcher, trustee under the will of Franklin A. Luce, deceased, in which demand was made by the writers, who claimed they were holders of some of said series I participation certificates, that said depositaries indicate their intention, within three days, of instituting a suit to compel payment by the Railways Co. of back dividends claimed to be due to the holders of such certificates; that although said depositaries immediately replied to the letter, asking information, etc. (to which reply they received no further communication)—yet on May 23, 1923, said Thatcher, as trustee, and others, as holders of some of said certificates, filed a bill in the U. S. District Court at Chicago, in their own behalf and in behalf of all other holders of participation certificates who desired to join as complainants, against these defendants as depositaries, the Railways Co. and the members of said finance committee, to compel the payment of said claimed back dividends; that said cause was prosecuted on behalf of the complainants therein by the same solicitor who represents the complainants in the present suit; that to said U. S. Court bill the same documents were attached as exhibits as are attached to the present bill, and the complainants in the former bill claimed the right to the payment to them of said dividends, and for the same reasons as do the complainants in the present bill; that motions were made by the defendants in the U. S. Court suit to dismiss the bill on the ground of its insufficiency to state a cause of action for the payment of said dividends or for the other relief prayed; that after a full hearing, on March 22, 1924 (about one month before the filing of the present bill), the U. S. Court entered a final decree dismissing said bill for want of equity; that at said time the judge of said U. S. Court delivered an opinion (copy of which is attached as an exhibit to said answer), in which

it was held in substance "that the Board of Directors, the Finance Committee and the Stockholders (i. e., said Depositaries) of the Railways Co. were not divested of all discretion in the matter of paying the dividends upon the participation certificates, and that on the contrary it was not the intent of the 'Plan' * * * to deprive the Railways Co. of all such discretion, and that the Railways Co. had not violated its duty, nor the contract, and that no right to the immediate payment of dividends existed"; and that these defendant depositaries "are advised and aver that such proceedings and decree are an adjudication binding the complainants in this case upon all of the matters and questions involved or presented or which could have been presented in said cause."

It appears from the reply brief of counsel for the defendant depositaries that, on appeal taken from said decree of the U. S. District Court in *Thatcher v. Chicago Rys. Co.*, 4 F. (2d) 63, to the U. S. Court of Appeals for the Seventh Circuit, said decree was affirmed on January 14, 1925. A copy of the opinion of the Court of Appeals is appended to counsels' reply brief. In the opinion certain pertinent provisions, contained in the plan, the agreement, and the mortgages securing the bonds, are set forth, and various questions presented to the court for decision are discussed, which questions were decided adversely to the complainants. As to the allegations concerning said depositaries it is said: "There are allegations that the depositaries have failed to do things *that do not seem to be obligatory upon them*. In any event, the only prayer for relief against them is that they be ordered to furnish 'to this court and said Railways Co. a list of the registered holders of Series I Participation Certificates.' There is no allegation of *any necessity* for such list, nor that the Depositaries have failed or will fail or refuse to furnish it, if and when necessary." As to certain provisions contained in article 3 of the plan,

particularly those in section 4 (relative to participation certificates) and in section 5 of article 3, it is said: "If section 4, *supra,* was the only provision relating to the certificates, the situation would be that the certificates would be entitled to all beneficial interest in the corporation stock, *except the voting power;* that is, they would be entitled to all stock dividends and to the proceeds of the stock in any liquidation of the Railways Co.'s assets. We find in the language of section 4 no intimation of any limitation upon the right and duty of the directors to exercise a sound discretion in the declaration or withholding of dividends, and in the administration of the Railways Co.'s affairs generally. * * * We are of the opinion that section 5 is a limitation upon the rights of certificate holders and that there is nothing to indicate any purpose or intention to take away or limit any discretionary power of the directors." After setting forth a provision contained in the agreement that "the rights of the holders of participation certificates shall be in all respects subject to the prior rights of the holders of bonds and collateral notes," and after mentioning an averment in the bill (substantially the same as in the present bill) that there is a clause in the first mortgage securing bonds that dividends "should not be fixed or distribution thereof made until such distribution should first be approved by said Finance Committee," it is further said in the opinion: "There is no attempt to show action by that committee." And after discussing and deciding adversely complainants' contention that said clause should not affect their rights, it is further said: "We are of the opinion that so far as plaintiffs are concerned the discretion vested in the Finance Committee is a valid and binding provision."

The defendant depositaries further allege in their answer to the present bill that, so far as they know, no meeting of the participation certificate holders has

been held since August 1, 1907, but they deny that at any time the defendant Blair has caused them to elect directors named by him or that their action in this regard has been under his domination, but on the contrary all elections have been the result of the exercise of their own best judgment as to who were proper persons to act as directors. They further allege that books have been kept showing the names and addresses of all persons to whom participation certificates have been issued from time to time; that for convenience these books have been in charge of the Harris Trust Co., as transfer agent, and are now in its possession; that they have been advised by their counsel that whatever right a particular certificate holder may have for information as to the Railways Co.'s affairs, or as to his own certificate, he has no right to demand of these defendants, or said transfer agent, information as to who are the other certificate holders, this being treated as a confidential matter, in which these defendants are under no duty or obligation to give to complainants or others information concerning the same; that as to the alleged demands of complainants upon them for a list of all the certificate holders they say that on February 14, 1923, the complainant Babcock requested such list, to which request they replied by letter of February 16 that in their opinion they had no right to direct that such list be furnished, and that in June, 1923, they received a request from Babcock's said firm for a list of the holders of series II and III certificate holders, to which they made similar reply; that during August, 1923, the complainants Mitchell and Sack made demands upon them for lists of said holders, that they again consulted counsel, and on September 5, 1923, they replied to said demands, saying that they refused them under advice of counsel, and sending in the letter a copy of said counsel's opinion on the subject, since which time they heard nothing further

concerning the matter until the filing of the present bill; and that in making all of said refusals they acted in good faith, and upon their counsel's advice, believing that under the circumstances they were not under any legal duty to furnish said lists, or that complainants were legally entitled to demand or to have them. These defendants further allege that complainants have not stated any case in their bill entitling them to any discovery or relief, and they pray for "the same benefit of this answer as if they had demurred to said bill."

Tenney, Harding, Sherman & Rogers, for appellants Harrison B. Riley et al.; Horace Kent Tenney, of counsel.

Henry S. Robbins, for appellees.

Mr. Justice Gridley delivered the opinion of the court.

The ultimate question involved in this appeal is whether the circuit court (after sustaining the demurrer of the Railways Co. to complainants' bill, and after denying complainants' motion that the five depositaries be ruled to produce a list of all holders of participation certificates issued under the agreement) was warranted, under the allegations of the bill and the sworn answer of said depositaries, in granting the interlocutory injunction. Respective counsel have elaborately argued the question in their briefs, supplemented by oral argument.

Complainants' counsel states that "the main purpose of this bill is, by final decree to place the *control* of the Railways Co. and its assets *in directors selected by the certificate holders,* who are the *equitable* owners of the company"; that the bill "is not one to compel the payment of dividends"—that question being involved in the *Thatcher* case; that the present suit presents for *final* decision the questions: "(1)

whether the Agreement, so far as it relates to the voting of the stock of the Railways Co. *is any longer operative,* and (2) if so, what is the proper construction of its provision conferring on the certificate holders the right to direct appellants (the Depositaries) whom to elect as directors, and also of its provision requiring these trustees to maintain a list of the certificate holders and their addresses,—the contention of appellees being that this latter provision confers on these certificate holders access to this voting list, for the same reason that the statute confers on stockholders the right to see the stock list—the purpose of both being that they, who have the beneficial interest in the corporation and its assets, may confer together and combine in voting for such persons as they may think should be intrusted with the control of their property''; that the question *on this appeal* is, ''whether the trial court misused its discretion in preventing appellants from proceeding to an election of directors on October 23, 1924 (and thus leaving the control of the company in directors already selected by appellants), until the case was at issue and the court had time to deliberately decide these important questions, or, *at least,* whether the court erred in preventing an election until appellees were given access to the list of certificate holders (which is withheld by appellants) and *thereafter* given an opportunity to have a meeting of certificate holders, as provided in the Agreement, to *direct* appellants whom to elect as directors''; that ''all these questions arise out of the construction of the agreement,'' which together with the ordinance and the plan are set out in the bill as exhibits and admitted by appellants' answer; and that, hence, all the facts upon which appellees' contentions rest ''are admitted in the record,'' and the insufficiency of the affidavit verifying the bill, as claimed by appellants' counsel, is immaterial. Complainants' counsel then makes and argues four points,

in substance as follows: (1) The bill is not demurrable because the agreement created a revocable proxy in the depositaries to vote the stock of the Railways Co. and by the filing of the bill that proxy has been revoked, and because the agreement amounts to an illegal voting trust as against the rights of the holders of the participation certificates who are the "real" owners of the Railway properties. (2) The bill is not demurrable because it also seeks to secure for the certificate holders the right to see the book kept by the depositaries, containing the names and addresses of all certificate holders. (3) This is a *class* suit, in that the holders of all series of participation certificates are interested in the legal questions presented and the relief to be granted. (4) As the bill states grounds for relief, the order granting the temporary injunction should not be reversed except for an abuse of discretion, and such discretion has not been abused, for the injunction only preserves the *status quo,* in that it leaves the control of the corporation in directors selected by appellants and only prevents the election of *new* directors until the further order of the court. In discussing the first point counsel direct attention to a provision of the agreement that, until August 1, 1912, and, "to the full extent thereafter *which may be permitted by law,* until all the consolidated mortgage bonds * * * shall be fully paid," said depositaries shall be entitled to vote the stock for the election of directors, etc., and, while conceding that said bonds are still outstanding, and said voting provision has been operative for 17 years with the acquiescence of all the certificate holders, and the present contest is between the bondholders and the certificate holders because, as charged, the large annual net earnings of the company and its present surplus have not been applied as they should have been to the payment of *dividends* upon series I certificates, but have been retained to increase the se-

curity of the bondholders, counsel says that this voting power so conferred on the depositaries is not "permitted by law," because of the provision contained in section 3 of article XI of the Illinois Constitution, supplemented by statutory enactment, which directs that "in all elections for directors or managers of incorporated companies, every stockholder shall have the right to vote, in person or by proxy for the number of shares of stock owned by him, for as many persons as there are directors or managers to be elected, or to *cumulate* said shares,  *  *  *  and such directors or managers shall not be elected in any other manner"; and counsel further says that the agreement "is not an attempt to transfer the voting power by way of *pledge* to the bondholders," but it "offends against the law and public policy of the State in that the voting power is irrevocably given to the trustees and it does not reserve to the certificate holders as full a power in the selection of directors as the law gives them," and that "the practical result of the Agreement has been, and is, to take from the real or equitable owners of the property of the company all control of its affairs and vest the same in appellants and Mr. Blair (their appointee), the president of the company and a vice president of two mortgagees."

Counsel for the depositaries on the other hand contend that, under the provisions of the plan and the agreement, the holders of the participation certificates cannot be considered as the *stockholders* of the Railways Co.  And they argue in substance that said plan and agreement disclose that none of the stock of the Railways Co. ever belonged to them or that they ever had a right to vote it; that the stock and the right to vote it has always been in the depositaries and their predecessors in title, which ownership and right are expressly reserved to them in many provisions of the agreement; that the rights of the

certificate holders were limited, both by the agreement and the certificates, to the rights then expressed and for the first time created, and the certificates were received by the holders with a full understanding of the limitations, which, aside from the right to participate in the distribution of corporate funds under the conditions mentioned, were to the effect that they had the privilege of giving, by united action, directions to the depositaries as to how they should vote the stock held by them; that under the plan and before the agreement was executed the stock belonged to the predecessors of the present depositaries; that the plan recognizes them as stockholders, in that in section 4 of article 3 thereof it is said that "the *stockholders* of the Railways Co. will make the capital stock of the Railways Co., viz, $100,000, the subject of an issue of Participation Certificates, of which there shall be issued certificates representing in the aggregate 265,100 equal parts," etc.; that, in the offer made to all persons interested in the reorganization, the Plan thus recognized, as mentioned in the opinion of U. S. Court of Appeals in the *Thatcher* case, that those who then held the stock were properly described as stockholders and that the rights to be given to the certificate holders were to be created by their action and with reference to the stock which they owned; and that in the agreement which was subsequently executed the ownership of the stock was continued in them and they *retained* the voting right thereof. Counsel for the depositaries also contend that, in view of the provisions of the plan and the traction situation at the time the plan was promulgated, the agreement should not be considered as an illegal voting trust, but as a valid agreement. And they argue in substance that the trust position occupied by the depositaries under the plan and agreement is not one in which, as claimed by complainants' counsel, complainants are the only beneficiaries whose

interests merit consideration, but that the depositaries are trustees for the enterprise as a whole and for the other parties in interest as well; that the alleged facts of the present case are essentially different from those in which it has been held an illegal voting trust existed; that the fact that an agreement creates or involves a trust which either gives or restricts the right to vote corporate stock does not necessarily render the agreement illegal (see *Venner v. Chicago City Ry. Co.,* 258 Ill. 523, 538); that, although, where the owner of stock gives to another the mere power to vote, such power even though made irrevocable in terms may sometimes be revoked (as in *Luthy v. Ream,* 270 Ill. 170), yet where the right is based upon a consideration, or is coupled with an interest, or is part of a contract by which the stock or some interest in it is acquired, such right may not be revocable (see *Chapman v. Bates,* 61 N. J. Eq. 658, 665; *Boyer v. Nesbitt,* 227 Pa. 398, 403); that a voting trust agreement, created as a part of a contract of reorganization, may be held valid and irrevocable as the mutual agreement of all those interested in the reorganization (see *Mobile & O. R. Co. v. Nicholas,* 98 Ala. 92, 119; *Ecker v. Kentucky Refining Co.,* 144 Ky. 264, 272); that under the facts alleged in the present bill the agreement was part of a general plan for the reorganization of the Chicago street railway system, creating new and interdependent rights and its purpose was not improper; and that complainants are in no position to attack the agreement (see *Felt v. U. S. Mortgage & Trust Co.,* 231 Ill. App. 110, 139).

After a careful examination of the bill and the provisions of the ordinance, plan and agreement, and after considering the arguments of respective counsel and adjudicated cases, including said *Thatcher* case, we are of the opinion that the bill is lacking in equity in its main aspect, and that it is insufficient to support the granting of the main ultimate relief prayed

for, viz., that the present right in the depositaries to vote the stock of the Railways Co. under said agreement cease, and that the control of the company be placed in the hands of directors to be elected by the holders of the participation certificates. And we think that the bill is insufficient in equity in so far as it seeks to obtain from the depositaries by a court order a list of the names and addresses of all the holders of the participation certificates. The circuit court denied complainants' motion for the entry of such an order, and, since the filing in this Appellate Court of the present appeal, the U. S. Circuit Court of Appeals in the *Thatcher* case, on an appeal from a decree of the U. S. District Court dismissing for want of equity a bill somewhat similar in its allegations and character, affirmed said decree, and in the course of its opinion *held* that the allegations of the U. S. Court bill were insufficient to entitle the complainants therein to obtain by court order such a list. And, the present bill being lacking in equity in its main aspect, and many of its material allegations (outside of the admitted provisions of said plan and agreement) being made on information and belief, which allegations are denied in the answer of the depositaries, we are further of the opinion that the court erred in granting the temporary injunctional order appealed from. An order for a temporary injunction is seldom granted where many of the material allegations, bearing on the ultimate relief sought, are made upon information and belief (2 High on Injunctions, sec. 1567; *Board of Trade v. Riordan,* 94 Ill. App. 298, 309; *Pepper Distributing Co. v. McLeod,* 121 Ill. App. 592, 593); and it should only be granted where the right to the ultimate relief is probable, and then on the theory of its necessity to prevent a substantial impairment of that right, *pendente lite.* In the present case there is no showing of any necessity for the injunction. The situation as to the exercise of the right of the de-

Babcock v. Chicago Railways Co. et al., 236 Ill. App. 360.

positaries to vote for directors is the same as it has been for 17 years. Clearly, the right to vote for directors should exist somewhere, and an injunction taking away that right from the parties in whom it has been lodged for so long a period is drastic in its character. With the injunction in force it is at least doubtful if vacancies in the directorate caused by death can be filled. Furthermore, the injunctional relief prayed for against Blair and his codirectors was in effect denied when the court sustained their demurrer to the bill. They were the parties against whom the vague and indefinite charges of misconduct were made. Yet the court granted the injunction against the depositaries based on a bill held insufficient as against the parties charged with the alleged misconduct. In view of our holdings it is unnecessary for us on this appeal to discuss the question, argued by respective counsel, whether complainants, as holders of some of the certificates, can properly represent all of the certificate holders as a class in the present proceeding.

For the reasons indicated that portion of the order of the circuit court, entered October 24, 1924, restraining until the further order of the court the five depositaries, Harrison B. Riley et al., "from voting the stock of the Chicago Railways Company for the election of any director of the said Railways Company" is reversed.

*Reversed.*

FITCH, P. J., and BARNES, J., concur.